on the calendar 24-2748 Granite State Insurance Company et al. v. Primary Arms, LLC. I'll reserve two minutes, opposed to three. I'll reserve two minutes. How many minutes would you like to reserve, Mr. Brown? Two minutes, Your Honor. Two minutes. Okay. I had written down three, but we're happy to key it however you like. We're going to do two minutes reserve. Okay. Mr. Brown, whenever you're ready for the appellant. Thank you, Your Honor. And may it please the Court, Alexander Brown for Appellant, Policyholder, Primary Arms. You don't have to bend down like that. You could just raise the whole thing if you want with the button and undo. Uh-huh. There we go. Yeah. Why don't we freeze the clock here? Let's reset the clock. We want to make sure you're very comfortable. Appreciate it. May it please the Court, Alexander Brown for Appellant, Policyholder, Primary Arms. This appeal presents an important question regarding the insurability of firearm retailers doing business in Texas, which is, under Texas law, do lawsuits alleging a firearm retailer caused injuries to the intentional sale of its products potentially allege an occurrence under products completed operations coverage? Given its broad importance, the issue should be certified to the Texas Supreme Court if there is any uncertainty. Here we submit the District Court erred by focusing on the intentional sale of the products at issue, unfinished frames and receivers, as opposed to the unintentional bodily injuries or property damage resulting therefrom. The policy covers an occurrence, and an occurrence is an accident, right? That — correct, Your Honor. Okay. So how — and we look at the allegations of the underlying complaints. How do they allege an accident? Well, Your Honor, we're talking about completed products operations coverage here. Completed products coverage operations provides coverage specifically for injuries or damages arising from the sale of a product. How do the underlying complaints allege an accident? Well, this Court must perform an eerie analysis, and that involves looking at the most recent and on-point decisions from the Texas Supreme Court. And there are two Texas Supreme Court decisions in 2008, Nokia and Lamar Holmes, which specifically say — addressing the definition of occurrence as respects products completed operations coverage, and they say that the occurrence analysis is whether or not, in these product cases, there are, and I quote, direct allegations purporting that the insured intended the injury, which is presumed only in intentional court cases. That comes from Lamar. And in other words, products cases that allege the seller should have known of injuries requires duty to defend, and that comes from Nokia. So the analysis in the most recent and on-point decisions of the occurrence — of the occurrence as respects — The complaints allege intentional marketing in a way to address individuals who do not have licenses, who would not be able to buy guns. The products are intentionally shipped into New York. They're intentionally designed so they do not fit the definition of a firearm. The intent is to avoid the gun requirements, background checks, serialization. How is that accidental conduct? Well, there are over 600 allegations in these complaints. And we're talking about — Those that I mentioned, how are they accidental in nature? The analysis here is whether or not there are any allegations, not whether all the allegations, not whether there are allegations of false marketing, allegations of intending to get this into the hands of criminals. The question for duty to defend, the prophylactic duty, is whether there is a single potential route to liability that is not predicated upon intentional misconduct or intentional injuries or intentional torts. And where — where I think what we're trying to get from you is where in the complaint is that negligence alleged? Don't — not — you know, not a case from the Texas Supreme Court. We can read the cases from the Texas Supreme Court. What we're focused on here is your complaint and what is alleged that's negligence. I think that's what — I don't want to speak for Judge Chin, but I think that's what he's trying to get at. Yes. That's what I'm trying to get at. Well, there are — there are two answers to that. Number one, there are specific theories of negligence, including negligent entrustment, which — which is traditionally covered under products and completed operations coverage and traditionally covered under — What page, what paragraph of the complaint are you referring to? This would be count seven — or count six of the — of the complaint, of the New York complaint, which we've been focusing on, is the negligent entrustment claim. Now, that combined with the fact that there are no allegations in the complaint anywhere that our client intended the injuries, that they intended to — or expected the injuries, that they intended to cause an increase in domestic violence, or that they intended to increase in suicides, there are no such allegations. So what you have is you have — the only allegation as to intent whatsoever — Does — does Texas law require an intent to cause those — those injuries? I'm sorry. Does that — under the theory — You were just — you were just identifying some injuries, and what I'm asking is, does Texas law require an intent to cause those injuries, or is it simply that there's an intent to engage in the acts that might ordinarily result in those injuries? That's what I'm asking. As — as respects to the occurrence analysis, you mean? Yes. Yeah. I mean, there's a — there's a difference — there's a difference between the intent — intentionally selling products, which is covered, and it's specifically covered under policies issued to firearm companies, versus an intent to injure, which is the analysis given — the occurrence analysis given to this type of coverage. Because otherwise, coverage would be illusory. If you sell products with clear operations coverage to firearm companies, and then say there is no occurrence because you intentionally sold firearms or firearm products, that would render the entire basis of the coverage illusory. Well, I don't think anyone's making that broad claim that as long as you intentionally sold guns, you don't get coverage from our insurance company. Do you think that's what the other side's arguing? That by virtue of selling guns, period, I thought they were making a whole host of very specific intentional things, that you're directing them to a particular market, that you were marketing them in a particular way to a particular segment of people. I didn't think that the concept was you are a gun manufacturer, and guns — this isn't like an inherently dangerous object lawsuit, is it? It could be framed that way, but — But it's not framed that way, is it? Well, it's not — it's not framed that way. In this case. Yeah, there are multiple claims here, and there are multiple allegations. There are a lot of allegations that are shotgun allegations against ten separate defendants, and really the concentration of — from district court are on allegations against all defendants, none of which, if you're looking at the facts as to primary arms, are specifically alleged. As to primary arms, as to — as to the policyholder here, here is what is alleged. Number one, that 95 percent of the policyholder's alleged sales took place prior to 2020, predating any of the New York bans or regulations, as well as the 2022 ATF regulation. Number two, there was no allegations that the policyholder was warned or otherwise knew its products would cause the alleged injuries. Number three, the only study in the complaint linking the sale of unfinished frames and receivers with increased injuries was published in 2022, postdating all of my clients' alleged sales at issue. But that sounds like the argument that ultimately the plaintiffs in their complaint against your client will not succeed, and that's not the test. The test isn't whether they'll be successful in their complaint. The test is whether the complaint alleges intentional conduct or negligent conduct and occurrence. And so I think we're focused on what in the allegations can you draw that it is alleging an occurrence or negligent conduct. Well, the fact that there are no allegations against our client that they intended the injuries, the fact that there are specifically traditional negligent entrustment allegations that are traditionally covered, but finally, the rule — But the plaintiffs here, the nature of the injuries they're alleging is that because of the selling, allegedly selling of the parts of the guns to a segment of the population that would not otherwise be able to possess a gun by selling parts and being able to evade regulations about registering, et cetera, that that caused an uptick in crime and then caused an increase in costs by law enforcement. I mean, that's essentially the allegation, whether they can prove it or not. But the claim is that your client intentionally, as opposed to negligently, sold and marketed these gun parts in that way. Well, they don't — you're jumping to sort of the other — the second part of the test, which is that the negligence results in bodily injury. They're not suggesting bodily injury. There's no allegation of bodily injury, is there? Well, I think under Texas law, the allegations that there are increased homicides, that they're seeking compensatory damages for homicides and domestic violences and suicides, I think that does constitute bodily injury. Not on behalf of the estates of the victims, right? Well, first of all —  On behalf of the estates of the victims, are they suing and trying to get recovery for them? I didn't understand that to be the case. I thought it was, I have to hire more police officers because all these things are going on. I have to give more money to hospitals because all this is going on. The New York — Are they doing that correctly, or are they asking for direct compensation to the estates of the victims? The New York complaint specifically seeks damages for compensable injuries to plaintiffs or any other person. So, yes, I mean — Can they do that? Can they seek — The New York Attorney General can do that. They can bring — they can seek compensable. But the point is that the duty to defend is extremely prophylactic. And if there's any chance that there's a covered claim, then that is — it's not what can be proved. We're not at a duty to indemnify. Right. Right. This is just, is there a pathway here forward where my client might potentially be held liable for negligence, might potentially be held liable for something other than all of the 635 allegations, just one allegation going forward, being held solely for negligent entrustment without any finding that it intended to injury, without any finding that expected the injury, that's what the duty to defend is. It's prophylactic. It's not — and that is — and that, I think, is where we are at right now. Okay. Thank you very much, Mr. Brown. You have reserved two minutes for rebuttal. Why don't we hear from counsel for the appellee and Mr. — St. Genos, Your Honor. St. Genos. Okay. You're up 10 minutes. Thank you, Your Honor. Good morning, Your Honors. And may it please the Court. Chris St. Genos and James Fitzmaurice on behalf of the appellees, Granite State Insurance Company and National Union Fire Insurance Company. I do think it's important to start with what the intentional conduct here that is being sued for is. They do — they started, it's alleged, as an optics manufacturer making scopes, became an online retailer of firearms and paraphernalia, gun accessories. But the case is not about that. That is what is ensured. It is not about that. Instead, as alleged, and we're stuck with the allegations at this stage in the proceedings, was a six-year business plan between 2016-2022, primarily shipped into New York, more than 25,000 packages, the vast majority of which contained parts that in as little as an hour can be assembled into a working firearm, such as a Glock 9 handgun or an AR-15 assault rifle. And that wasn't by accident. It was as part of — it was alleged to be part of a plan. They're called ghost guns because they are untraceable. There's no serial number, no license check. You don't even have to use your real name when you buy them. But it wasn't just selling ghost guns that it's an issue. In the New York AG's complaint, this is paragraph 95, the state said that Primary did much more than simply sell unfinished frames and receivers. That included extensive marketing efforts, touting their products as a way around background checks and other public safety laws. Now, counsel referenced the negligent entrustment claim, count six. The Supreme Court of Texas tells us to put aside labels — that's the Lamar case, the Nokia case — and to rely on the factual allegations. I think Judge Chin asked for the paragraphs. If we look at 631 and 633, 631 says Primary, quote, intended to sell and knowingly sold ghost guns to individuals who were likely to create an unreasonable risk of harm to others, such as those with criminal convictions subject to restraining orders and with disqualifying mental health histories. So the question is, let's weigh that conduct. That is what is the cause of the harm alleged in these three underlying complaints. It's what Judge Schofield looked at the district court when making the accident determination, and it's what this court has to look at on appeal. And common sense dictates that this business plan, which was carried out over multiple years, and the harm it caused — The argument is that all they need is one claim or allegation that would be negligence-based, and then that would be enough to trigger the duty to cover. How do you respond to that? So that claim, Judge Chin, is based on, in the 1,800 paragraphs of allegations, one allegation that says recklessly, negligently, intentionally. I think the Supreme Court of Texas in a number of cases has said, first, to ignore labels. Don't look at whether something is called negligence by the plaintiffs or the cause of action is called negligence. You look at the facts. And here, no matter what count we're looking at — and, by the way, Buffalo and Rochester do not allege anything called negligence in their case. They do not have an allegation of the word negligence in either 600-paragraph complaint. The Supreme Court tells us to look at the factual allegations across these complaints and determine what it is they might be held liable for. There is no — under any fair reading of the facts here, there is no — there are no factual allegations that, if proven and primary was held liable for the harm that is alleged, can be classified as negligence. It is about a six-year business plan intending to sell, whether it's true or not, intending to sell to people who are actively seeking to evade federal gun laws, like criminals who then will use the guns to cause the harm at issue. Judge Chin, you asked whether or not the test required a subjective intent to harm. The answer is decidedly no. Lamar, a case that they rely heavily on, I think very clearly tells us there's two paths here to what is not an accident. Certainly, an intent to cause harm, which is maybe all the way on one side here of the spectrum, is not an accident. An intentional tort, which — where, under Texas law, an intention to cause harm is presumed, is also not an accident. And on the other side, like in Lamar, which isn't a products case, it's about an installation, unknowing installation of a faulty foundation in a house, is there are times where a party can undertake intentional conduct, installing a basement, selling phones, as in Nokia, and do so in a negligent manner. So when intentional conduct is done negligently, unknowingly, then that's sort of on the other side. But negligence is classically an accident. Selling of a defective gun that blows up in someone's hand, that would be covered. Under Nokia, it would be unless — and Nokia had two sort of series of allegations, and this is, I think, directly to the point, which is when there is a series of allegations that say intent and when there is a series of allegations that say negligence and it's possible the negligence ones can prevail, there can be an accident alleged, even if the intentional conduct wouldn't be covered. That was the case in Nokia where the RFR, the radiation-emitting phones, were sold in part based on the allegations without any knowledge on the part of Nokia that they did this. That was the other side of the spectrum here, which is negligent conduct. Even intentional negligent conduct can be an accident. We're in the middle, and cases like Lamar, cases like Nokia, cases like Cowan, tell us that when we're in the middle, the test is it's intentional conduct, that's taken. It's whether or not the harm that resulted is of the type that ordinarily follows, or as they say, it is the natural and probable consequence of that specific intentional conduct. That test has been repeated over and over. It's in the cases that they cite and rely on, such as Lamar and Nokia. Intentional torts are not the only time where that test applies. Now, when we apply that test here, again, we have to start with the harm. And Judge Kahn, I think you said it. The harm here is the available data shows, this is paragraph I think 576 in the New York complaint, that ghost guns are proliferating and are being used in crimes at an exceptional exponential pace. The increase in such sales has coincided with a massive uptick in gun murders. The influx of ghost guns into New York is a significant threat to public health, and primary and the other defendants affirmatively harm New Yorkers by increasing the number of firearms likely to be used in the commission of a crime. That's the harm. Now, what is the conduct? What is the intentional conduct here? It's not negligence. It's not they accidentally shipped guns to New York, meaning to send them to Wyoming, or they meant to send 10 and they sold 10,000. It's that they were aware that persons who have been convicted of felonies are an important segment of the gun market. The unfinished frames and receivers, the ghost guns they marketed and sold in New York, are designed to subvert federal and state statutes that prevents guns from falling into the hands of people who cannot and should not possess them. Because of that built-in evasion, this is paragraph 29 of New York, of federal and state laws, these ghost guns are naturally attractive to and naturally marketed to persons who would not be able to purchase them legally, who want a gun that cannot be traced back to them. That harm is most certainly the natural and probable consequence of the intentional conduct alleged here, which was not, as much as they say it, the normal sale of a product, by the way. The policy defines policies, defined products, completed operations, hazard coverage. The only difference in the policies with respect to that is the aggregate limit, but whether it's a product or whether it's a lewd photograph, like in the Cowan case, the fact of the matter is that the accident requirement applies. Here, undeniably, the district court got it right. The harm that resulted in all of the allegations, if it's proven to be true, was the natural and probable consequence of the intentional conduct. And I think, Judge Nardini, you asked a question. Let me just touch briefly on the alternative argument we raised at the district court. The district court did not address it. The court doesn't have to get to it if it affirms on the first round, but to the extent the court decides to do so, it provides another ground for relief. In Lamar and Nokia, the Texas Supreme Court said, especially when we are looking at an insurance policy that's based on an insurance standard office, services office form, these are standard forms, we'd like to have uniformity. And so they look at cases outside, and in Bluebell, for example, they looked at the Acuity case, the Rite Aid case, and the Quest case, cases that said what damage is because of bodily injury means is you're the harmed party, you're someone who paid a parent, paid for the harmed party's damages, or you're the government, but you're suing to recover the money that you paid on behalf of that harmed individual. We don't have that here, and it's much different. It's abating a future nuisance. And in terms of Texas law, Bluebell adopts this and makes the same point, but importantly, so does Nokia. Nokia, which is not an occurrence case, it is a damage is because of bodily injury case, noted that because past purchasers are alleged to have suffered bodily injury, and because they, the past purchasers, here on a class action basis, seek damages for those injuries already incurred, the suits fall within the policy language, the damage is because of bodily injury language, even if the case also involves claims by those who have not yet purchased wireless phones. So under Nokia, under Bluebell, just like the out-of-state cases decided by the Delaware Supreme Court, the Ohio Supreme Court, and the Sixth Circuit, because of requires a direct link between the person suing for the harm, the entity suing for the harm, and the cost of fixing that harm. General abatement funds for public nuisances don't fit within that requirement, and so that's an additional reason, Your Honor. Thank you very much. Very good. Thank you. Mr. Brown, you have reserved two minutes for rebuttal. If there's anything you would like to respond to, we're all ears. Your Honor, the rules, the well-settled rules under Texas law on duty to defend are, number one, a complaint must be construed liberally in favor of coverage. Number two, over-inclusive allegations do not negate the duty to defend. And number three, the duty applies if there is a possibility that any one of the claims might be covered. Again, we cannot accept every single allegation in here as true. If that was the case, then there would never be a duty to defend. The duty to defend would be narrower than the duty to identify, because the duty to defend is prophylactic and makes sure that if any claim potentially gets through that is not predicated on an intentional misconduct, is not predicated on intentional injury, that that is a potentially covered claim. Now, turning to — and in this case, this is not an intentional — this is not an intentional tort case. None of the allegations, none of the claims made against our client are predicated upon an intentional tort. Public nuisance statute specifically says that the existence of a public nuisance shall not depend on whether the gun industry member acted for the purpose of causing harm to the public. Now, in my last few seconds, I do want to address the fact that we have — that Texas — we believe Texas court is very clear in terms of the fact that public nuisance claim-type damages are damages because of bodily injury or property damage. However, this — this issue as to whether public nuisance claims are covered under CGL policies is a matter of significant importance to not just the gun industry, but to all policyholders, to policyholders who are facing potential climate litigation, to policyholders who are facing environmental contamination. And so if that is an unsettled issue, it is even more of a reason to certify this to the Texas Supreme Court.  Thank you to both sides. Very helpful oral arguments. We very much appreciate your all coming in today. We will, as with all the other cases today, reserve decision. So thank you very much and have a wonderful day.